2014 UT App 123

**Rene BORJA, Petitioner,**

v.

**LABOR COMMISSION and Wal–Mart, Respondents.**

No. 20130157–CA.

Court of Appeals of Utah.

May 30, 2014.

Aaron J. Prisbrey and Trevor C. Sanders, for Petitioner.

Jaceson R. Maughan, for Respondent Labor Commission.

David H. Tolk and Cody G. Kesler, for Respondent Wal–Mart.

Senior Judge PAMELA T. GREENWOOD authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.[1]

Memorandum Decision

GREENWOOD, Senior Judge:

¶ 1 Rene Borja seeks judicial review of an order of the Utah Labor Commission Appeals Board (the Board) denying him benefits to pay for lumbar fusion surgery. We decline to disturb the Board's decision.

¶ 2 Borja injured his back on March 7, 2010, while employed by Wal–Mart, when he was pulling a heavy pallet on a pallet jack. Borja was treated at Intermountain Work-Med the next day for low back pain that radiated down his back and legs. He was diagnosed with a lumbar strain and initially treated with physical therapy. The pain continued, and an MRI scan indicated multiple disc bulges as well as multilevel spondylosis with degenerative disease, facet-joint arthropathy, and foraminal and canal narrowing. He was treated with lumbar epidural steroid

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

injections but reported worsening pain. Borja consulted with Dr. Michael Major, who recommended spinal decompression and fusion surgery as necessary to alleviate his spinal condition.

¶ 3 Borja was subsequently examined by Wal–Mart's medical consultant, Dr. Richard Knoebel, who disagreed with Dr. Major's assessment and proposed treatment, opining that Borja had no permanent impairment from the industrial accident. He further found that Borja demonstrated significant pain-amplification behavior and histrionics. He also stated that Borja exhibited "Waddell signs" that indicated lack of credibility.[2] Dr. Knoebel stated that lumbar decompression and fusion surgery was "not reasonable or indicated" as there was "[n]o objective evidence of pseudoclaudication or lumbar radiculopathy" and there was "significant pain amplification behavior."

¶ 4 The parties stipulated to referral to a medical panel. The medical panel examined Borja and reviewed his medical history. The panel reported that Borja appeared to exaggerate his pain "with non-physiological findings, factitious weakness and excessive pain behaviors during its examination." The panel also reported Waddell signs. Borja's pain was medically caused by the accident, according to the panel, with permanent aggravation of previously asymptomatic degeneration of Borja's lumbar spine. However, the panel concluded, "there are no objective signs to justify surgery. If done, it would be for the presence of pain only, which . . . is grossly exaggerated." The report also stated that "[t]he presence of non-organic, non-physiologic signs on the examination, particularly to this degree[,] predict a poor surgical outcome." Therefore, the panel opined that surgery was not warranted and that further steroid injections were not appropriate because they had not previously been effective. The panel instead recommended non-narcotic

pain medication, exercise, and increased physical activity.

¶ 5 Borja objected to the medical panel report and requested an objection hearing, arguing that the medical panel should not have utilized Waddell signs to determine there was non-organic pain and lack of credibility because Waddell signs are not based on reliable data. The administrative law judge (ALJ) assigned to the case declined to hold a hearing. She determined that Borja suffered a compensable work-related injury but that the evidence did not demonstrate that surgery was necessary. She also found that treatment up to that time had been necessary and that continued treatment should consist of non-narcotic medication with medical support. In regard to the use of Waddell signs, the ALJ stated that Borja's argument went "to the weight of the evidence to be considered with all . . . evidence in the matter and [found] no basis to set a hearing or exclude the [medical panel] report," and that "Waddell signs are typically part of an in person patient evaluation."

¶ 6 Subsequently, Borja filed a Motion for Review with the Board, again challenging the use of Waddell signs in evaluating his claim and contending there should be a hearing on the medical panel's report[3] The Board affirmed the ALJ's decision. The Board found that "the medical panel relied on several factors other than Waddell signs in assessing Mr. Borja's symptoms and the necessity of future medical care." It noted in particular the medical panel's finding that Borja "did not respond to steroid injections and that his pain complaints were exaggerated with non-physiological findings, factitious weakness and excessive pain behaviors." Further, there was a lack of evidence of a physical injury requiring surgery. The Board concluded that "regardless of Mr. Borja's Waddell signs, it is clear the medical panel did not find his presentation to be credible or

2. The administrative law judge's decision in this case described "Waddell's signs" as follows: "a group of physical signs, first described in a 1980 article in *SPINE*, and named for the article's principal author, Gordon Waddell. Waddell's signs may indicate [a] non-organic component to chronic low back pain."

3. Borja's objection and request for hearing submitted to the ALJ referred to one study critical of the use of Waddell signs, but did not include a copy of the study. His Motion for Review filed with the Board attached copies of two studies.

that he required future medical care for his injury beyond non-narcotic pain medication."

¶ 7 Regarding the ALJ's refusal to hold a hearing on Borja's objection to the medical panel report, the Board determined that Borja did not present new information that "would have altered the panel's analysis." The study presented by Borja was "not new information; more importantly, there is no indication [that] such discussion would have altered the panel's analysis as the panel relied on several other factors apart from Waddell signs in reaching its conclusions." Therefore, the Board concluded that the ALJ appropriately declined to hold a hearing.

¶ 8 This petition for judicial review followed. Borja claims it was an abuse of discretion not to hold a hearing on his objection to the medical report pursuant to section 34A–2–601(2)(f)(i) of the Utah Code. Borja further argues that this error was compounded by allowing the medical panel report to be received into evidence with an inadequate foundation.

█ ¶ 9 Procedures regarding objections to a medical panel report are contained in Utah Code subsections 34A–2–601(2)(d)(ii) and (iii). A party may file a written objection "[w]ithin 20 days after the [medical] report" is mailed to the parties. Utah Code Ann. § 34A–2–601(2)(d)(ii) (LexisNexis Supp. 2013). If such an objection is timely filed, "the administrative law judge *may* set the case for hearing to determine the facts and issues involved." *Id.* § 34A–2–601(2)(f)(i) (emphasis added).[4] Thus, the statute grants the ALJ discretion in deciding whether to hold a hearing on an objection to a medical panel report. *See Johnston v. Labor Comm'n*, 2013 UT App 179, ¶ 12, 307 P.3d 615. Consequently, we review the ALJ's denial of a hearing in this case under an abuse of discretion standard, providing relief "only if a reasonable basis for that decision is not apparent from the record." *Id.* ¶¶ 15–16; *see also Murray v. Labor Comm'n*, 2013 UT 38, ¶ 32, 308 P.3d 461 (noting that an appel-

late court reviews an agency's discretionary decision for "abuse of discretion to ensure that it falls within the bounds of reasonableness and rationality" (internal quotation marks omitted)).

█ ¶ 10 Borja argues that the ALJ abused her discretion by denying a hearing because he had proffered new information consisting of references to scholarly studies undermining the reliability of Waddell signs. In addition, he claims that the medical panel's consideration of non-medical indications such as behavior was beyond its field of expertise and unfairly tainted the panel's assessment of his medical condition. He further argues that because of these deficiencies there was not an adequate foundation for admission of the medical panel report.

¶ 11 The *Johnston v. Labor Commission* decision informs our analysis in this case. In *Johnston*, the employee argued, among other things, that the medical panel had "misunderstood and improperly applied" a rule regarding aggravation of a medical condition. 2013 UT App 179, ¶¶ 17, 24, 307 P.3d 615. On appeal, this court determined that the argument was without merit because the Board, not the medical panel, is the finder of fact, obligated "to view all the evidence submitted as a whole and then make an appropriate determination." *Id.* ¶ 24. After "reviewing the record as a whole," this court held that there was no abuse of discretion in denying a hearing on an objection that was based, in part, on this issue. *Id.* ¶ 25.

¶ 12 Similarly, in this case, the Board had before it, in addition to the ALJ's Findings of Fact, Conclusions of Law, and Order, the medical panel report and Borja's arguments that the medical panel "misapplied the criteria for Waddell signs, making its conclusions regarding Mr. Borja's credibility unreliable." The Board determined that the medical evidence established that surgery was not warranted for Borja, with or without reference to Waddell signs or other credibility considerations. The studies assailing the use of

---

4. An additional avenue for presenting new and conflicting evidence to a medical panel is contained in rule 602–2–2(B)(4) of the Utah Administrative Code. Under this rule, "Where there is a proffer of new written conflicting medical evidence, the Administrative Law Judge may, in lieu of a hearing, re-submit the new evidence to the panel for consideration and clarification." Utah Admin. Code R602–2–2(B)(4). There is no indication Borja utilized this provision.

Waddell signs did nothing to undermine the fundamental medical evidence of Borja's condition. Therefore, the decision to deny a hearing on that sole issue was not unreasonable or irrational because the studies Borja referred to would not "have altered the medical panel's analysis." *Certified Bldg. Maint. v. Labor Comm'n*, 2012 UT App 240, ¶ 16, 285 P.3d 831.

¶ 13 Furthermore, "where the [ALJ] has properly denied a hearing, the appropriate ruling on the objection should be obvious enough that no additional testimony or evidence is warranted." *Johnston*, 2013 UT App 179, ¶ 30, 307 P.3d 615. Thus, no supporting foundational testimony is necessary to allow consideration of the medical panel's report. *See id.*

¶ 14 For the above reasons, we decline to disturb the Board's decision.[5]

---

5. Due to our decision above, we find it unnecessary to consider the Board's contention that Borja's arguments and the studies he referred to were not "conflicting medical testimony" necessary to qualify for a hearing on an objection to a medical panel report.